**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____  :

BRENDA SMITH ATKINSON           :       CIVIL NO. 3:17-CV-1932 (KAD)
    Plaintiff,

V.                              :

NANCY A. BERRYHILL
ACTING COMMISIONER              :
SOCIAL SECURITY ADMINISTRATION
    Defendant.
_____  :

**MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO REVERSE [ECF 19]**
**AND DEFENDANT'S MOTION TO AFFIRM [ECF 23]**

**Preliminary Statement**

Plaintiff Brenda Smith Atkinson brings this appeal pursuant to Title 42, U.S.C. §405(g).

She appeals the defendant Commissioner's decision denying her disability insurance benefits

under Title II of the Social Security Act (hereinafter "the Act") based upon a finding that she is

not "disabled" under the Act.  She seeks an order of this court reversing the Commissioner's

decision on the ground that the Commissioner's findings are not supported by substantial

evidence in the record.  The Commissioner, on the other hand, avers that the Commissioner's

findings are supported by substantial evidence in the record and asks this court to affirm the

decision. For the reasons set forth below, the plaintiff's motion is DENIED.  The defendant

Commissioner's motion is GRANTED.

**Standard of Review**

The plaintiff sought a determination that she was disabled as of November 30, 2013, the

purported date of onset, through the date of the hearing.  A person is "disabled" under the Act if

that person is unable to "engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). In addition, a claimant must establish that her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). The Commissioner has established a five step sequential analysis to which an ALJ must adhere when evaluating disability claims. *See* 20 C.F.R. 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not,[1] the Commissioner determines whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if such a "severe impairment" is established, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity (hereinafter "RFC") to perform his or her past work; (5) if the claimant is unable to perform his or her past work, the Commissioner must next determine whether there is other work in the national economy which the claimant can perform. 20 C.F.R. 404.1520(a)(4)(i)-(v). The claimant bears the burden of proof with respect to steps one through four. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). The

---

[1] If the Claimant is engaged in substantial gainful activity, the claimant is not disabled under the Act and no further analysis is required. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b); *Nettles v. Sullivan,* 956 F.2d 820 (8th Cir. 1992).

Commissioner bears the burden as to step five, the existence of work in the national economy which the claimant is capable of performing. *McIntyre v Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

It is well-settled that the district court will reverse an ALJ's decision only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater,* 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . "). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The court does not inquire as to whether the record might also support the plaintiff's claims, but only whether there is substantial evidence to support the Commissioner's decision. *See Bonet ex rel. T.B. v. Colvin,* 523 F. App'x 58, 59 (2d Cir. 2013). The potential for drawing more than one conclusion from the record does not preclude a finding that the agency's findings are supported by substantial evidence. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). Once an ALJ finds facts, the court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin.* 683 F.3d 443, 448 (2d Cir. 2012). In sum, "if there is substantial evidence to support the [agency's] determination, it must be upheld." *Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013).

**The ALJ's Decision**

At step one, the ALJ determined that the plaintiff had not been engaged in substantial gainful activity since the claimed onset date, November 30, 2013. At step two, the ALJ found that the plaintiff had severe impairments, specifically, chronic low back and neck pain as well as

a non-specified depressive disorder. The ALJ rejected a claimed impairment to the left thumb, citing successful treatment for the same in April 2013 and no reference to the injury in any medical records thereafter.[2] At step three, the ALJ found that the plaintiff did not establish an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1.[3] At step four, the ALJ determined that the plaintiff had an RFC "to perform medium work" as defined in 20 C.F.R. 404.1567(c). The ALJ placed limitations on this determination, however, finding that the plaintiff was limited to simple routine tasks; should not work with the general public, and while she was able to work with others, the plaintiff should not do work that required frequent or extensive collaboration. The ALJ further limited the plaintiff to occasional overhead reaching and found that the plaintiff would work best in routines that rarely change. In light of these findings, the ALJ determined that the plaintiff was "unable to perform any past relevant work." At step five, the ALJ, crediting the testimony of the vocational expert, determined that there were a significant number of jobs in the national economy that the plaintiff could perform. The ALJ therefore concluded that the plaintiff was not disabled as of November 30, 2013 or at any time thereafter through the date of the hearing.

At issue in this appeal are the Commissioner's determinations at step four and step five of the sequential analysis. The plaintiff claims that the ALJ's determinations regarding her RFC are not supported by substantial evidence. Specifically, she first claims that the ALJ did not give adequate weight to the opinions of Dr. Campagna and Dr. Salant regarding her mental disability. She next claims that the ALJ did not adequately consider her concerns regarding the side effects of her medications. Her final claim is that the hypothetical placed to the vocational expert did

---

[2] The plaintiff does not appeal this determination.
[3] The plaintiff does not appeal this determination.

not accurately reflect her limitations, as opined upon by Dr. Kramer. The Commissioner, in response, avers that the ALJ's findings are well supported by substantial evidence.

The court has reviewed the parties' submissions, the decision of the ALJ, the transcript of proceedings, the record of the agency proceedings and applicable statutes, regulations and appellate case law governing the issues presented. The court addresses the plaintiff's claims *seriatum.*

### Discussion

A treating physician's opinion is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §404.1527(c)(2); *Poupore v. Astrue,* 566 F.3d 303, 307 (2d Cir. 2009). However, an ALJ is not required to give controlling weight to medical opinions presented. *Matta v. Astrue,* 508 F. App'x 53, 56 (2d Cir. 2013) (holding that the ALJ's decision need not directly correspond with any of the opinions of medical sources relied upon and the ALJ is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole); *See also Richardson v. Perales,* 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). "An ALJ need not give a treating physician's opinion controlling weight when the opinion is based on a claimant's subjective complaints that [the] ALJ does not find credible." *Vance,* 860 F.3d at 1120. In the final analysis, an ALJ must balance and weigh conflicting evidence. *See Cage v. Comm'r of Soc. Sec.,* 692 F.3d 118, 122 (2d Cir. 2012) (deferring to the Commissioner's resolution of conflicting evidence).

### *The ALJ's Findings Regarding Dr. Campagna and Dr. Salant are Supported by Substantial Evidence*

Here, the plaintiff asserts that the ALJ gave insufficient weight to the opinions of Dr. Campagna and Dr. Salant. Although the ALJ carefully considered this medical evidence, she assigned it little or no weight. A review of the record provides ample reason for rejecting this evidence.

Dr. Campagna is a psychologist who performed an examination of the plaintiff at the request of the Commissioner because the plaintiff claimed disability due to mental impairment. Plaintiff drove herself to the consultation and Dr. Campagna noted that she was properly oriented, well groomed, polite, reserved and cooperative. She told Dr. Campagna she could not work because over time "I can't remember, I cry, I get depressed and sometimes I blow up." She also told Dr. Campagna that despite having these issues for 5 years, she covered them up.

Following the assessment, Dr. Campagna opined that the plaintiff had "marked impairment in her ability to recall and thus carry out simple instructions, and marked impairment of her ability to make simple work-related decisions." He further found that her "**processing difficulties** and diminished self-regard markedly reduce her ability to interact appropriately with the public in general. . . to respond appropriately to supervisors and coworkers and to . . . adapt to workplace changes and manage workplace stress." (emphasis added).

The ALJ noted that Dr. Campagna's assessment was based entirely on the plaintiff's self report to the diagnostic tools he used. A review of the record reveals substantial reason to question the reliability of that self report and the conclusion that the plaintiff has significant "processing difficulties." Dr. Campagna administered an IQ test to the plaintiff. It revealed a full scale IQ of 55. Dr. Campagna recognized that the result was completely inconsistent with plaintiff's presentation, her work history, her social history and the fact that she was able to manage her own financial, medical and business affairs. This alone permits the inference that

the plaintiff exaggerated her deficits. Indeed, he indicated in his report that the plaintiff's performance on the various subtests to the IQ test were all indicative of "significant cognitive and visual motor impairment." Her work history alone belies any such conclusion. In addition, the validity scales in the personality test "suggested that she may have over identified" her symptoms.

The record in its entirety also reveals additional reasons to question the plaintiff's credibility and the validity of her subjective complaints. The record reveals multiple inconsistencies between the plaintiff's testimony and the medical records. For example, she purportedly told Dr. Salant, her psychologist, that she does not treat her pain with medication because she fears the side effects. However, the records from CareMedia demonstrate that she was taking Percocet and/or oxycontin for years, to include the same time period that she was seeing Dr. Salant. In addition, although she testified about her medications, she made no mention of any side effects or concerns regarding the same, and the CareMedia records reveal no such concerns voiced by the plaintiff. In addition, the record readily reveals inconsistencies between the plaintiff's subjective complaints and the objective findings upon examination. For example, from November 2013 through 2015, the plaintiff sought treatment from CareMedia for a variety of issues. Although the plaintiff consistently complained of back and neck pain, the treatment notes repeatedly reflect that the results of physical examination were within normal limits. The notes indicate no vertebral or spinal tenderness, and a normal gait, motor strength, sensory exam and reflexes. Moreover, the plaintiff was treated by Connecticut Orthopaedic Specialists in September 2015. At that time, she complained of chronic and constant neck and back pain. Aside from paraspinal tenderness of the neck with restricted motion, her physical

examination was completely normal as to her strength, reflexes, and muscle composition, and showed that she had the ability to walk heel/toe and to rise from a squatting position.

Under these circumstances and based upon the entire record, the ALJ was well within her charge to give little weight to portions of Dr. Campagna's assessment. *See Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002) (holding that an ALJ may reject portions of medical opinion if it is not supported or is contradicted by the record as a whole).

Of note, the ALJ did not reject outright Dr. Campagna's assessment. She accepted Dr. Campagna's GAF score of 55, which indicates moderate (as opposed to marked) difficulty in social and occupational functioning. The ALJ also accepted, albeit to a lesser degree, the limitations on the plaintiff's interaction with the public, performance of simple tasks and ability to work collaboratively.

Dr. Salant was, for a period of time, the plaintiff's psychologist. She submitted two letters on her behalf which, if given more weight, might have resulted in a different determination by the ALJ. However, the ALJ had good reason to give little weight to Dr. Salant's assessment. First, Dr. Salant submitted no treatment notes so there was no contemporaneous record of the treatment provided. Dr. Salant submitted only two letters, one dated August 5, 2014, the other dated December 23, 2015. They revealed that Dr. Salant treated the plaintiff only intermittently from 2012 to 2015, and that Dr. Salant did not see the plaintiff at all during 2013. In April 2014, after an 18-month gap in treatment, the plaintiff re-engaged. Thereafter, the plaintiff attended several sporadic appointments, while canceling others. The ALJ properly observed that the information and opinion that Dr. Salant provided derived entirely from the plaintiff's subjective complaints. As already noted, the plaintiff's self-report, to include specifically her self-report to Dr. Salant, was reasonably questioned. And although Dr. Salant

recommended additional treatments (based upon her erroneous belief that the plaintiff was not taking medications for pain), the plaintiff did not follow through with the doctor's recommendations. Based upon the entirety of the record, the ALJ had ample reason to give little weight to Dr. Salant's opinions.

In view of the above, the court concludes that the ALJ findings regarding Dr. Campagna and Dr. Salant are supported by substantial evidence.

***The ALJ Properly Weighed the Plaintiff's Claims Regarding Side Effects of her Medication***

The plaintiff next argues that the ALJ failed to take into consideration the impact of the side effects of her medication. As noted above, the record as a whole does not support this contention. To the extent Dr. Salant discusses the plaintiff's claim in this regard, the ALJ properly noted that the CareMedia records were inconsistent with the plaintiff's claim that she did not want to take medications because of the side effects. Indeed, she was prescribed medication regularly, and the CareMedia records do not evidence the plaintiff's purported concerns about side effects. Similarly, the plaintiff's testimony did not reveal any such concerns.

***The ALJ Determination of the Plaintiff's RFC is Supported By Substantial Evidence***

Lastly, the plaintiff claims that the hypothetical question posed to the vocational expert did not accurately reflect her limitations as identified by Dr. Kramer and therefore should not be relied upon to determine whether there are jobs in the national economy which the plaintiff can perform. However, the hypothetical was entirely consistent with the ALJ's findings as to the plaintiff's RFC. The question for this court is therefore whether the ALJ's determination of the plaintiff's RFC is supported by substantial evidence, to include the ALJ's consideration and weighting of Dr. Kramer's opinion.

In making the RFC determination, the ALJ quite properly rejected some of Dr. Kramer's opinions. Dr. Kramer began treating the plaintiff in 2011 for a worker's compensation injury related to neck pain. She was treated with muscle relaxers, pain medication and injection therapy. In March 2012, the plaintiff was noted to have a normal gait, but pain with no root signs upon cervical motion. The plaintiff improved and returned to work. In June 2012, the plaintiff received injection therapy for her "lumbar flare up" which she subsequently described as "quite helpful." By December 2012, the plaintiff was noted to enjoy an excellent response to treatment and "much diminished" low back pain. Physical examination revealed a normal gait, improved lumbar motion, less pain and tenderness with no root signs.

The plaintiff next saw Dr. Kramer in April 2013 when she complained of increased lower back pain. At that time, he noted that the straight leg raising test was negative. In May 2013, her "lumbar films" were unremarkable. Notwithstanding those results, and without explanation, Dr. Kramer cleared the plaintiff for sedentary work only. Dr. Kramer continued to see the plaintiff and repeatedly noted that her gait was normal and that he identified no root signs. Dr. Kramer also prescribed the plaintiff prednisone during 2013and she thereafter reported improvement. Although she complained of lower extremity weakness, her MRI was unremarkable.

In October 2013, shortly before the claimed onset date, the plaintiff was examined by Dr. Mednick upon her complaint of lower back pain. At that time, the plaintiff told Dr. Mednick that the cortisone injections she received from Dr. Kramer resulted in substantial improvement in her back pain. Upon physical examination, Dr. Mednick found that the plaintiff had a normal gait and full range of motion of the neck without pain on palpitation. She passed the straight leg raising test and could stand from a sitting position without difficulty. Dr. Mednick opined that there was nothing in his examination to suggest myopathy, radiculopathy, neuropathy, or an

upper motor neuron disorder.  He had no recommendations for treatment.  Insofar as Dr.
Mednick's opinion was based upon a full comprehensive examination, the ALJ gave it great
weight.

The plaintiff returned to Dr. Kramer in March 2014 at which time she reported that her
medication was helpful and that she was tolerating the prednisone well.  Physical examination
revealed normal gait but a complaint of "cervical and lumbar motion producing posterior
cervical pain and lumbar pain with tenderness."  In June 2014, the plaintiff requested an increase
in her prednisone dosage, which was prescribed.  By letter dated July 14, 2014, Dr. Kramer
limited the plaintiff to sedentary work consisting of predominantly sitting, with a five pound
lifting restriction, and a ban on repetitive lifting or bending.  He provided no reason for the
chosen limitations.  The limitations are inconsistent with Dr. Mednick's findings as well as Dr.
Kramer's own findings.  The plaintiff saw Dr. Kramer again in September 2014 "bitterly
complaining of pain" with similar results upon physical examination as previously noted.

Although Dr. Kramer had not seen the plaintiff since September 2014, Dr. Kramer
submitted a form on the plaintiff's behalf in October 2015.  Therein, he limited the plaintiff to
occasionally lifting ten pounds and frequently lifting five pounds; standing and walking less than
two hours in an eight hour day, and opined that she could sit without restriction.  He imposed
these limitations due to the plaintiff's "chronic cervical radiculitis and lumbar strain."  He did not
otherwise explain the restrictions he imposed.

There is no question that the ALJ considered Dr. Kramer's opinions.  In large measure,
she rejected them or afforded them little weight because they were either unsupported by
objective findings, they relied too extensively on the plaintiff's self-report, they were
inconsistent with Dr. Kramer's own objective findings, or they were inconsistent with the

remainder of the record.  Specifically, with respect to the October 2015 letter, Dr. Kramer had not seen the plaintiff for over one year prior to offering his opinion.  That he was nevertheless willing to do so further supports the ALJ assessment that Dr. Kramer was acting as a sympathetic advocate for his patient rather than objective physician.

In addressing each of the plaintiff's claims on appeal, the question for this court is whether the ALJ's determination that the plaintiff could do "medium work" subject to certain identified limitations, is supported by substantial evidence in the record.  For the reasons discussed above, and after review of the entire record, the court answers this question in the affirmative. *See Matta,* 508 F. App'x at 56.   Thus, insofar as the ALJ's determination of the plaintiff's RFC is supported by substantial evidence in the record, the use of that RFC in fashioning the hypothetical question for the vocational expert was appropriate.  The expert opined that there are a significant number of jobs in the national economy that the plaintiff can perform even with her limitations.  Therefore, the ALJ's finding, consistent with this testimony is supported by substantial evidence in the record.

For all of the foregoing reasons, the plaintiff's motion to reverse is DENIED.  The defendant's motion to affirm is GRANTED.

Dated at Bridgeport, Connecticut this 26th day of November 2018.

SO ORDERED

/S/ Kari A. Dooley
Kari A. Dooley
United States District Judge